UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

FIRST AMERICAN TITLE INSURANCE CO., et al.,

        Plaintiffs,

  v.

UNITED STATES OF AMERICA,

        Defendant.

CASE NO. C04-429JLR

ORDER

## I. INTRODUCTION

This matter comes before the court on Defendant's Motion for Summary Judgment (Dkt. # 32). Having reviewed all the documents filed in support of and in opposition to the motion, and having heard oral argument, the court GRANTS Defendant's motion.

## II. BACKGROUND

Plaintiffs First American Title Insurance Company, Commonwealth Land Title Insurance Company, and Chicago Title Insurance Company ("the Title Companies") filed suit against Defendant United States to recover federal estate taxes alleged to have been "erroneously or illegally assessed or collected" under 28 U.S.C. § 1346(a). Compl. ¶ 5. The estate taxes at issue in this action stem from the death of Roberta C. Smith, who left an estate primarily consisting of three houses and stock in Frisko Freeze, a drive-in

ORDER – 1

restaurant in Tacoma, Washington. After her death, the Pierce County Superior Court entered an order admitting Ms. Smith's will to probate and appointing Ms. Smith's daughter, Penny Jensen, as the estate's personal representative with non-intervention powers. The court's order gave Ms. Jensen the "power to transfer any and all real and personal property of decedent without further order of this court." Henry Decl. at 13.

Ms. Jensen deeded the three houses in the estate to herself and her husband. In addition, Ms. Jensen filed a federal estate tax return on behalf of her mother and paid the estate tax required. Ms. Jensen later sold the houses to purchasers who obtained title insurance policies issued by the Title Companies. During this same period, the Internal Revenue Service ("IRS") audited the Smith estate and increased the value of the Frisko Freeze stock to $911,987, almost $150,000 more than originally claimed. When the Smith Estate failed to make installment payments on the estate taxes owed, the IRS sent letters to the three new homeowners threatening to seize and sell the houses unless the homeowners paid the remaining estate tax owed in full. The homeowners tendered the letters to the Title Companies who paid $189,371.99 in taxes under protest. The Title Companies filed claims with the IRS seeking a refund of the amount paid. The IRS denied the claims and the Title Companies filed this action.

Previously, this court held that the Title Companies have standing under 28 U.S.C. § 1346(a) to challenge only the IRS's attachment of the Smith estate tax lien to the homes they insured. Order, Dkt. # 19 at 4-5 (Dec. 16, 2004); Order, Dkt. # 31 at 12 (Mar. 7, 2005). The IRS now moves for summary judgment on the attachment claim, arguing that the tax lien properly attached to the homes at issue and that the statute of limitations bars

ORDER – 2

recovery of $50,000 of the Title Companies' refund claim.[1]  Def.'s Mot. at 4-5.  In response, the Title Companies contend that although the tax liens attached, they were later divested when some or all of the proceeds from the sale of the three homes were used to pay the obligations and/or administration expenses of the estate.  Pls.' Resp. at 2.  The Title Companies also argue that the statute of limitations does not bar recovery of the $50,000 payment.  Id.

### III.   ANALYSIS

**A.   Standard of Review**

Summary judgment is appropriate when the moving party demonstrates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  Once the moving party meets its initial responsibility, the burden shifts to the non-moving party to establish that a genuine issue as to any material fact exists.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

Evidence submitted by a party opposing summary judgment is presumed valid, and all reasonable inferences that may be drawn from that evidence must be drawn in favor of the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  The non-moving party cannot simply rest on its allegation without any significant probative

---

[1] In its reply brief, the IRS "acknowledges that there may be a factual issue concerning" the timeliness of the $50,000 payment.  Def.'s Reply at 9.  This issue is moot, however, given the court's decision to grant summary judgment in favor of the IRS.

ORDER – 3

evidence tending to support the complaint.  See U.A. Local 343 v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1995); see also Anderson, 477 U.S. at 249 ("[I]f the evidence is merely colorable or is not significantly probative summary judgment may be granted."). "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23.

**B.     Did the Federal Estate Tax Lien Divest from the Title Companies' Properties?**

26 U.S.C. § 6324(a)(1) creates a special estate tax lien that attaches to the gross estate of a decedent for ten years from the date of death.  Probate property, such as the property at issue here, retains the special estate tax lien upon transfer to a purchaser unless the IRS discharges the personal representative of the lien under 26 U.S.C. § 2204. United States v. Vohland, 675 F.2d 1071, 1075 (9th Cir. 1982).  The gross estate is divested of the special estate tax lien to the extent that the gross estate is "used for the payment of charges against the estate and expenses of its administration, allowed by any court having jurisdiction thereof." 26 U.S.C. § 6324(a)(1).

The Title Companies do not dispute that a special estate tax lien attached to the gross estate of Roberta Smith at her death in 1991.  Nor do they dispute that Ms. Jensen, the personal representative of the estate, failed to obtain a discharge of liability under 26 U.S.C. § 2204 before selling the properties in question.  Rather, the Title Companies contend that the proceeds from the sale of the three homes were used to pay charges against the estate and expenses of its administration, thereby divesting the lien under § 6324(a)(1).  To prove that divestment occurred under § 6324(a)(1), the Title Companies must establish that (1) the sale proceeds satisfied "charges against the estate or expenses

of its administration," and that (2) a court with proper jurisdiction allowed the satisfaction.

Under the first element, the Title Companies must conduct a "careful tracing" of the sale proceeds and provide evidence that the sale proceeds were used to satisfy "charges against the estate or expenses of its administration."[2] Northington v. United States, 475 F.2d 720, 723 (5th Cir. 1973) (upholding summary judgment when record did not reflect that money was used to satisfy obligations of the estate); A&B Steel Shearing & Processing, Inc. v United States, 934 F. Supp. 254, 259 (E.D. Mich. 1996) (granting summary judgment when there was no evidence that "the money purportedly given to the estate was used for the payment of estate expenses"), aff'd, 145 F.3d 1329 (6th Cir. 1998).

The Title Companies contend that they used the proceeds from the house sales to pay encumbrances, taxes, title insurance premiums, and real estate commissions and that these payments qualify as "charges against the estate or expenses of its administration." For example, the Title Companies allege that one of the three houses was encumbered by a $124,000 deed of trust in the name of Roberta Smith. Dahl Decl. at 5-8. After the sale of the house, the Title Companies contend that Plaintiff First American Title paid $122,829.98 from the sale proceeds to the company owning the deed of trust. The Title Companies argue that *if* the deed of trust "was paid out of the proceeds of the sale of the property, the special lien was automatically divested." Pls. Resp. at 6. Further, the Title

---

[2]The parties dispute what qualifies as "charges against the estate and expenses of its administration" under § 6324(a)(1). While the IRS contends that state law governs this definition, the Title Companies argue that 26 U.S.C. § 2053, which lists certain expenses that the IRS deducts when calculating estate taxes, provides "helpful" guidance. Regardless, this issue does not affect the outcome of this case and therefore the court need not resolve it.

ORDER – 5

Companies contend that a portion of the sale proceeds from the homes was used to satisfy loans Ms. Jensen may have incurred in "expenses of the estate" after her mother's death.[3] Id.

Nearly all of the Title Companies' evidence, however, falls short of the "careful tracing" required to establish the first element of divestment. Northington, 475 F.2d at 723. The Title Companies' arguments resound in hypotheticals: "If it was paid out of the proceeds of the sale of the property. . . . If these loans were made to pay expenses of the estate. . . . All of these expenditures may be additional expenses of the estate." Pls.' Resp. at 6. In general, this hypothetical-based approach is insufficient to withstand summary judgment and establish a material issue of fact. Anderson, 477 U.S. at 249 ("[I]f the evidence is merely colorable or is not significantly probative summary judgment may be granted."). Although the Title Companies' strongest evidence that Plaintiff First American Title's $122,829.98 deed of trust payment may create a material issue of fact on the first element of divestment, the Title Companies' claim ultimately fails on the second element.

---

[3] The Title Companies also contend that before they made their final payment to the IRS, the estate paid state death taxes and federal taxes. The Title Companies argue that "[i]f the source of these payments was the three real properties, the special lien is divested," without providing any evidence that the properties were the source of the payments. Pls.' Resp. at 5 (emphasis added). The Title Companies, without evidence to create a genuine issue of fact, fail to satisfy their burden on summary judgment. When the moving party demonstrates that there is no genuine issue as to any material fact and judgment is warranted as a matter of law, the burden shifts to the non-moving party to establish that a genuine issue of material fact exists. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The court cannot rely on conjecture alone to establish that a genuine issue of fact exists. E.g., Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1112 (9th Cir. 2003) ("[Non-moving party] cannot defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements."); see also R.W. Beck & Assoc. v. City & Borough of Sitka, 27 F.3d 1475, 1481 (9th Cir. 1994) ("Arguments based on conjecture or speculation are insufficient to raise a genuine issue of material fact . . .").

ORDER – 6

Assuming *arguendo* that the estate or Title Companies used the sale proceeds from the three homes to satisfy the charges or expenses of the estate, the Title Companies must still establish that a court with proper jurisdiction allowed such payments. § 6324(a)(1). The Title Companies contend that the Pierce County Superior Court's non-intervention probate order constitutes an "allow[ance] by any court having jurisdiction thereof" for purposes of § 6324(a)(1). A non-intervention order entitles the personal representative to administer and close the estate without "court intervention or supervision." Estate of Ardell, 980 P.2d 771, 776 (Wash. 1999); RCW 11.68.010 (1991) (repealed 1997). The court's probate order conferred Ms. Jensen with the "power to transfer any and all real and personal property of decedent without further order of this court." Henry Decl. at 13. A personal representative with non-intervention powers may nevertheless petition the court for an order during the administration of the estate without waiving non-intervention powers. RCW 11.68.120; Estate of Ardell, 980 P.2d at 776.

Although Washington law governs what payments by the estate are "allowed" for purposes of § 6324(a)(1), there are no state or federal cases applying Washington law under this provision. See United States v. Sec. First Nat'l Bank, 30 F. Supp. 113 (S.D. Cal. 1939) ("Since [the] requirement of proper court approval casts the burden of examining the correctness of the items upon state court, state law governs."). The Fifth Circuit, however, has held that an independent executor's decision to allow a claim in Texas does not "satisfy the requirement that the expenditures be 'allowed by any court having jurisdiction thereof'" for purposes of § 6324. Kleine v. United States, 539 F.2d 417, 433 (5th Cir. 1976). Similar to the non-intervention statute in this case, the Texas independent administration system "authorizes an executor to proceed with the administration of an estate, without requiring court approval of specific dispositions." Id.

ORDER – 7

at 429.  The Fifth Circuit rejected the argument that Texas' independent administration system provided sufficient "allowance" for purposes of § 6324(a)(1), reasoning that Congress intended to "interpose an independent and neutral judicial evaluation of claims as a prerequisite to any divestiture of the special estate tax lien in order to protect the right and ability of the Service to collect the estate tax." Id. at 431.  The court noted that although the independent executor had legal authority to act as the probate court would in similar situations, that authority was not "ipso facto, the equivalent of judicial approval within the contemplation and meaning of § 6324(a)(1)." Id. at 432.

The Title Companies attempt to avoid Kleine on two grounds.  First, the Title Companies contend that Kleine is factually distinguishable because unlike the executor in Kleine, Ms. Jensen had the power to sell the properties without court approval.  This distinction, however, is not dispositive; the authorization to sell property without seeking court approval is "not the same as actually receiving court approval, within the meaning of § 6324." A&B Steel Shearing & Processing, 934 F. Supp. at 259.  Second, the Title Companies argue that the portion of Kleine that addresses the independent executor system is dictum because the appellants were unable to trace the proceeds of the sale.  Pls.' Resp. at 11.  This characterization is incorrect.  The court relied on the express intent of Congress to hold that Texas' independent administration system failed to provide the required "allowance" under § 6324 and therefore did not reach the issue of whether the proceeds were used to satisfy charges or expenses of the estate.  Kleine, 539 F.2d at 431.

The court finds that the Fifth Circuit's decision in Kleine provides persuasive authority and governs the case at bar.  There is no guiding Ninth Circuit authority applying § 6324(a)(1), and the Fifth Circuit appears to be the only circuit court

ORDER – 8

considering the precise issue. Similar to the independent administration system in <u>Kleine</u>, Ms. Jensen's non-intervention powers do not constitute an allowance for purposes of § 6324(a)(1). Washington law provides a mechanism for personal representatives with non-intervention powers to petition the court for an order during the administration of the estate without waiving non-intervention powers. RCW 11.68.120. Petitioning the probate court for "allowance" accomplishes the purposes of § 6324(a)(1) by providing an "independent and neutral judicial evaluation" of the divestment process. <u>Kleine</u>, 539 F.2d at 431. It is undisputed that Ms. Jensen did not petition the probate court to allow any of the sale proceeds from the three properties to satisfy "charges against the estate and expenses against its administration." Thus, the court GRANTS summary judgment in favor of the United States based on the Title Companies' inability to establish that the second element of divestment – court "allowance" – exists.

## IV.   CONCLUSION

For the foregoing reasons, the court GRANTS Defendant's Motion for Summary Judgment (Dkt. # 32) and dismisses Plaintiffs' case.

Dated this 12th day of May, 2005.

JAMES L. ROBART
United States District Judge

ORDER – 9